MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

THOMAS BOER, Trial Attorney
Environmental Enforcement Section
301 Howard Street, Suite 1050
San Francisco, CA 94105
Ph. (415) 744-6471; fax (415) 744-6476

STEVEN W. MYHRE
Acting United States Attorney
District of Nevada
BLAINE T. WELSH (Bar No. 4790)
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada  89101
Ph. (702) 388-6336; fax (702) 388-6787

Attorneys for Plaintiff United States of America

CATHERINE CORTEZ MASTO
Attorney General for the State of Nevada
JANET HESS (Bar No. 3435)
WILLIAM FREY (Bar No. 4266)
100 North Carson Street
Carson City, Nevada 89701-4717
Ph. (775) 684-1100; fax (775) 684-1108

Attorneys for Plaintiff Nevada Division of Environmental Protection

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the NEVADA DIVISION OF ENVIRONMENTAL PROTECTION,<br><br>Plaintiffs,<br><br>v.<br><br>NEVADA POWER COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. _____<br><br>**COMPLAINT** |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator (the "Administrator") of the United States Environmental Protection Agency ("EPA"), and the Nevada Division of Environmental Protection ("NDEP"), file this complaint and allege as follows:

## INTRODUCTION

1.      This is a civil action brought by the United States pursuant to Section 113(b) of the Clean Air Act (the "Act"), 42 U.S.C. § 7413(b), as amended, and NDEP pursuant to Nev. Rev. Stat. §§ 445B.460 and 445B.470, and Section 304 of the Act, 42 U.S.C. § 7604, (collectively, "Plaintiffs") against NEVADA POWER COMPANY, ("Nevada Power" or "Defendant"), for injunctive relief and the assessment of civil penalties for violations of the Act and the Act's implementing regulations, including requirements established in the State of Nevada's State Implementation Plan ("Nevada SIP") and Nevada Power's Title V Operating Permit, for numerous violations of visible air pollutant limits ("opacity limits"), as well as numerous additional violations of sampling, testing, monitoring, recordkeeping, and reporting requirements, facility operating requirements, New Source Performance Standards, and sulfur and sulfur dioxide emissions limits at Nevada Power's Reid Gardner Generating Station, located near Moapa, Nevada ("Reid Gardner Station" or the "Facility").

## JURISDICTION, AUTHORITY, AND VENUE

2.      The Court has jurisdiction of the subject matter of this action pursuant to Sections

113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331,

1345, and 1355.  In addition, the Court has supplemental jurisdiction over the state law claims of

NDEP pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this District pursuant to Sections 113(b) of the Act, 42 U.S.C.

§ 7413(b), and 28 U.S.C. §§ 1391(b), (c) and 1395(a), because Nevada Power is headquartered in

this District, Reid Gardner Station is located, and operated by the Defendant in this District, and

the violations alleged in this Complaint occurred and/or are occurring in this District.

4.      Authority to bring this action is vested in the United States Department of Justice

pursuant to Section 305 of the Act, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. § 516 and 519.

Authority to bring this action is vested in NDEP pursuant to Nev. Rev. Stat. §§ 445B.230 and

445B.235.

## NOTICES

5.      On December 2, 2004, and July 19, 2005, NDEP issued a total of fifty-six Notices

of Alleged Violation to Defendant, consisting of NDEP docket numbers 1862 through 1907, and

1942 through 1951, alleging violations of the Nevada SIP, Chapter 445B of the Nevada

Administrative Code ("NAC"), and the Act at Reid Gardner Station.

6.      On June 21, 2006, EPA issued to Defendant a Notice of Violation ("NOV"),

docket number R9-06-10, alleging violations of the Act and the Nevada SIP at Reid Gardner

Station.

- 3 -

7.      The United States has provided notice of the commencement of this action to the

State of Nevada, pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

8.      The 30-day period established in Section 113 of the Act, 42 U.S.C. § 7413(a)(1),

between issuance of the Notices of Violation and commencement of a civil action for violations

of the SIP and the Title V Permit, has elapsed.

### DEFENDANT

9.      Defendant is the owner and operator of several electrical generating stations in

Nevada, including Reid Gardner Station, a coal-fired electric generation plant near the town of

Moapa, in Clark County, Nevada.  Reid Gardner Station generates electricity from four units,

designated Reid Gardner Units One through Four ("Units 1 - 4," or, individually, a "Unit").

10.      Nevada Power, headquartered in Las Vegas, Nevada, is incorporated under the laws

of the State of Nevada, and is a wholly-owned subsidiary of Sierra Pacific Resources. Sierra Pacific

Resources, is headquartered in Reno, Nevada, and incorporated under the laws of the State of

Nevada.  Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C.

§ 7602(e).

11.      At all times relevant to this civil action, Defendant has been the operator of Reid

Gardner Station, and has had an ownership interest in Reid Gardner Station.

12.      Reid Gardner Station is a "stationary source," as that term is defined in Section 302(z)

of the Act, 42 U.S.C. 42 U.S.C. § 7602(z).

- 4 -

## STATUTORY BACKGROUND

13.     The Clean Air Act is designed to protect and enhance the quality of the Nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

### State Implementation Plan

14.     Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for certain air pollutants for which air quality criteria have been issued, including particulate matter, pursuant to Section 108 of the Act, 42 U.S.C. § 7408.

15.     Pursuant to Section 110(a) of the Act, 42 U.S.C. § 7410(a), each State must adopt and submit to EPA for approval an implementation plan that provides for the attainment and maintenance of each such NAAQS.

16.     Pursuant to Section 302(q) of the Act, 42 U.S.C. § 7602(q), an applicable implementation plan is the implementation plan, or most recent revision thereof, which has been approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410.  Such an applicable implementation plan is also referred to as a state implementation plan ("SIP").

17.     The State of Nevada has adopted a SIP approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410.  The State of Nevada SIP includes federally-approved portions of the Nevada Air Control regulations, codified at all relevant times as NDEP Rule § 445.430 et seq., (49 Fed. Reg. 11,626), and/or in Chapter 445B of the NAC.

<u>Operating Permit</u>

18.    Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." Reid Gardner Station is a "major source" as that term is defined in Section 501(2) of the Act, 42 U.S.C. § 7661(2).

19.    Pursuant to 40 C.F.R. Part 70, EPA granted final approval to NDEP's Title V operating permit program on November 30, 2001 (66 Fed. Reg. 63,188). In accord with Section 113(b) of the Act, 42 U.S.C. § 7613(b), operating permits issued under an approved program are federally enforceable.

20.    Section 502(a) of the Act, 42 U.S.C. § 7661a(a), has at all relevant times made it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

21.    Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. Part 70, and NDEP Title V operating permit program regulations in Nevada Administrative Code Chapter 445B, have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Clean Air Act and the requirements of the applicable SIP.

22.    Section 504(c) of the Act, 42 U.S.C. § 7661c(c), has at all relevant times specified that each Title V permit shall set forth inspection, entry, monitoring, compliance certification, and reporting requirements to assure compliance with the permit terms and conditions.

23.     40 C.F.R. § 70.6 specifies standard permit requirements for permits issued pursuant to Title V, including, but not limited to, monitoring and related recordkeeping requirements.

24.     Pursuant to its authority under Title V of the Act, NDEP issued the Defendant a Class I Operating Permit, AP4911-0897 ("Operating Permit"), on April 22, 2004, for the operation of Reid Gardner Station.

25.     Prior to issuance of Operating Permit AP4911-0897, the Defendant operated Reid Gardner Station pursuant to a State-issued Air Quality Operating Permit, OP 2219, issued on March 11, 1992 ("1992 Operating Permit").

26.     Pursuant to Nevada Revised Statutes ("NRS") §§ 445B.450 - 445B.470, NDEP has authority to initiate an enforcement action for the violation of any provision of the Operating Permit and/or the 1992 Operating Permit.

<u>New Source Performance Standards</u>

27.     Section 111(b)(1)(A) of the Act, 42 U.S.C. § 7411(b)(1)(A), requires EPA to publish a list of categories of stationary sources that emit or may emit any air pollutant.  The list must include any categories of sources which are determined to cause or significantly contribute to air pollution which may endanger public health or welfare.

28.     Section 111(b)(1)(B) of the Act, 42 U.S.C. § 7411(b)(1)(B), requires EPA to promulgate regulations establishing federal standards of performance for new sources of air pollutants within each of these categories.  "New sources" are defined as stationary sources, the construction or modification of which is commenced after the publication of the regulations or

proposed regulations prescribing a standard of performance applicable to such source.  42 U.S.C. § 7411(a)(2).  The standards are known as New Source Performance Standards ("NSPS").

29.     Section 111(e) of the Act, 42 U.S.C. § 7411(e), prohibits an owner or operator of a new source from operating that source in violations of a NSPS after the effective date of the applicable NSPS to such source.

30.     Pursuant to Sections 111 and 114 of the Act, 42 U.S.C. §§ 7411, 7414, EPA promulgated 40 C.F.R. Part 60, Subpart A, §§ 60.1 - 60.19, which contain general provisions regarding NSPS.  EPA has also promulgated NSPS for various industrial categories in 40 C.F.R. Part 60.

31.     Pursuant to 40 C.F.R. § 60.1, the provisions of 40 C.F.R. Part 60 apply to the owner or operator of any stationary source which contains an affected facility, the construction, reconstruction, or modification of which is commenced after the publication in Part 60 of any standard (or, if earlier, the date of publication of any proposed standard) applicable to that facility.

32.     Pursuant to Section 111(b)(1)(A) of the Act, 42 U.S.C. § 7411(b)(1)(A), at 40 C.F.R. §§ 60.250 - 60.254 ("Subpart Y") EPA has identified Coal Preparation Plants as one category of stationary sources that cause, or contribute significantly to, air pollution that may reasonably be anticipated to endanger public health or welfare.

## ENFORCEMENT PROVISIONS

33.     Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), provides that:

Whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of an applicable implementation plan or permit, the Administrator shall notify the person and the State in which the plan applies of such finding.  At any time after the expiration of 30 days following the date on which such a notice of a violation is issued, the Administrator may . . .

\*     \*     \*

(C) bring a civil action in accordance with subsection (b) of this section.

34.     Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3), provides that "Except for a requirement or prohibition enforceable under the preceding provisions of this subsection, whenever on the basis of any information available to the Administrator, the Administrator finds that any person has violated, or is in violation of, any other requirement or prohibition of this subchapter . . . the Administrator may . . . bring a civil action in accordance with subsection (b) of this subsection . . ."

35.     Section 113(b)(1) of the Act, 42 U.S.C. § 7413(b)(1), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997 and, $27,500 per day for each such violation occurring on or after January 31, 1997, and $32,500 per day for each such violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, any requirement or prohibition of an applicable implementation plan or permit.

- 9 -

36.     Section 113(b)(2) of the Act, 42 U.S.C. § 7413(b)(2), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997 and, $27,500 per day for each such violation occurring on or after January 31, 1997, and $32,500 per day for each such violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, requirements of the Act other than those specified in Section 113(b)(1), 42 U.S.C. § 7413(b)(1), including violations of Section 111, 42 U.S.C. § 7411.

37.     40 C.F.R. § 52.23 provides, inter alia, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to Section 113 of the Act, 42 U.S.C. § 7413.

38.     Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), provides that if EPA finds that any person is in violation of a SIP or Title V Permit requirement, EPA shall notify the violator and the relevant State of such finding.  After 30 days following issuance of this notice, EPA or its authorized representative may bring a civil judicial enforcement action.

39.     Section 304(a) of the Act, 42 U.S.C. § 7604(a), provides that a State, or other person, may commence a civil action against any person who is alleged to have violated an emission standard or limitation, including any standard or limitation established under any permit issued pursuant to Title V of the Act or under any applicable SIP approved by EPA.

**FIRST CLAIM FOR RELIEF**

(Opacity Emission Violations)

40.     The allegations of Paragraphs 1 through 39, above, are realleged and fully incorporated herein by reference.

41.     The federally-approved Nevada SIP version of NDEP Rule 445.721 (Maximum Opacity of Emissions) regulates visible air pollutant emissions, including particulate matter, from sources such as Reid Gardner Station, by limiting the opacity of any emissions.

42.     NDEP Rule 445.721 provides, in part, that no owner or operator may cause or permit the discharge into the atmosphere from any stationary source of any air contaminant for a period, or periods, aggregating more than three minutes in any one hour which is of an opacity equal to or greater than twenty percent.  At all times relevant to this complaint, NDEP Rule 445.721 has been part of the federally approved and enforceable SIP for attainment and maintenance of the ambient air quality standards in Nevada.  At all relevant times, Reid Gardner Station has been subject to the Nevada SIP version of NDEP Rule 445.721.

43.     Pursuant to Sections I.Z., VI.A.2.7, VI.B.2.a.7, VI.C.2.a.7, VI.D.2.a.7, VI.E.2.a.10, VI.F.2.a.10, VI.G.2.a.13, and VI.H.2.a.13 of the Operating Permit, the Defendant is prohibited from discharging into the atmosphere, from the exhaust stacks of any unit at Reid Gardner Station, opacity equal to or in excess of twenty-percent for a period or periods aggregating more than three minutes in any one hour.

44.     Accordingly, the Nevada SIP and the Operating Permit prohibit Reid Gardner Station from causing visible smoke emissions with an opacity greater than or equal to twenty percent for more than three aggregated minutes in any one hour.

- 11 -

45.     Section 6.D.1 of the 1992 Operating Permit set forth standard for the maximum opacity of emissions allowed from Units 1 through 4.

46.     At all relevant times, Units 1 through 4, each with its own associated smokestack, has emitted and continues to emit pollutants, including particulate matter.

47.     The federally-approved SIP version of NDEP Rule 445.721 and Sections I.Z.3, VI.A.4.b.7, VI.B.4.b.10, IV.C.4.b.7, VI.D.4.b.10, VI.E.4.b.9, VI.F.4.b.12, VI.G.4.b.10, and VI.H.4.b.14 of the Operating Permit require that a continuous opacity monitoring system, to continuously measure and record opacity, must be operated and maintained for Units 1 through 4. At all times relevant to this complaint, Rule 445.721 has been part of the federally approved and enforceable SIP for attainment and maintenance of the ambient air quality standards.

48.     Pursuant to the Nevada SIP and Sections VI.A.4.b.8, VI.B.4.b.11, IV.C.4.b.8, VI.D.4.b.11, VI.E.4.b.10, VI.F.4.b.13, VI.G.4.b.11, and VI.H.4.b.14 of the Operating Permit, Reid Gardner Station was, and is, required to install, calibrate, operate and maintain a continuous data collection system for Units 1 through 4, to continuously record the opacity, in percent opacity, as measured by the continuous opacity monitoring system, in accord with the requirements set forth in the NAC §§ 445B.256 - 445B.267, and 40 C.F.R. Parts 75.10 and 75.14.

49.     At various times emissions from each of the four Units at Reid Gardner Station have included, and continue to include, air contamination for periods aggregating more than three minutes in any one hour, with an opacity equal to or greater than twenty percent.

50.     Based upon Reid Gardner Station's own opacity records and reports, the Defendant, beginning on or about April 22, 2004, and continuing through the date of this

Complaint, has violated the Nevada SIP and/or the Operating Permit opacity limits for emissions from Units 1 through 4 at Reid Gardner Station on numerous occasions by emitting air contamination with an opacity equal to or greater than twenty percent for periods aggregating more than three minutes in any one hour.

51.     On numerous occasions, based upon Reid Gardner Station's own opacity records and reports, the Defendant, beginning on or about October 1, 2002 and continuing until April 21, 2004, violated the 1992 Operating Permit, federal regulations and/or the Nevada SIP by exceeding the maximum opacity of emissions allowed from Units 1 through 4 at Reid Gardner Station.

52.     Accordingly, Defendant has violated, and continues to violate, Nevada SIP Rule 445.721 and the Operating Permit. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

53.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation which occurred on or after May 30, 2001, and $32,500 per day for each such violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SECOND CLAIM FOR RELIEF

### (Opacity Reporting Violations)

54.     The allegations of Paragraphs 1 through 53, above, are realleged and fully incorporated herein by reference.

55.     The federally approved SIP version of NDEP Rule 445.667 requires notification, to NDEP of excess emissions resulting from scheduled maintenance, testing, and malfunctions, including: notification, in writing, at least 24 hours in advance of any scheduled maintenance or repairs which may result in excess emissions of air contaminants otherwise prohibited by the SIP; notification within 24 hours of any excess emissions after any malfunction, breakdown, or upset of process or pollution control equipment or during startup of such equipment; and, the production of sufficient information, within 15 days after any malfunction, breakdown, upset, startup or human error, sufficient to determine the seriousness of the excess emissions.  At all times relevant to this complaint, Rule 445.667 has been part of the federally approved and enforceable SIP for attainment and maintenance of the ambient air quality standards.

56.     The federally approved SIP version of NDEP Rule 445.692 requires the maintenance of records and the submission of reports, including: the maintenance of records of the occurrence and duration of any startup, shutdown or malfunction in the operation of any affected facility, any malfunction of the air pollution control equipment, or any periods during which a continuous monitoring system or monitoring device is inoperative; the maintenance of a file of all measurements, including, but not limited to those from continuous monitoring systems, continuous monitoring system performance evaluations, and continuous monitoring system or monitoring device calibration checks; and, the submission of a written report of excess emissions for every calendar quarter.  At all times relevant to this complaint, Rule 445.692 has been part of the federally approved and enforceable SIP for attainment and maintenance of the ambient air quality standards.

57.     Sections III.B and III.C of the Operating Permit set forth notification and reporting requirements for excess emissions at Reid Gardner Station, including opacity emission exceedances from Units one through four.

58.     Sections 6.E.1, 6.E.3, and 6.E.4 of the 1992 Operating Permit set forth monitoring, reporting, notification and recordkeeping requirements for opacity exceedances at Reid Gardner Station.  Section 445B.232 of the NAC sets forth notification and reporting requirements, applicable to Reid Gardner Station, for excess opacity emissions.

59.     Section V.A of the Operating Permit requires that Nevada Power retain records of all required monitoring data and supporting information for five years from the date of the sample collection, measurement, report, or analysis.

60.     Section V.B of the Operating Permit requires that Nevada Power record monitoring information required by the conditions of the Permit, including the date, the location and time of the sampling or measurements and the operating conditions at the time of the sampling or measurements.

61.     Beginning on or about April 22, 2004, and continuing through the date of this Complaint, Defendant failed to report numerous emission exceedances, consisting of air contamination with an opacity equal to or greater than twenty percent for periods aggregating more than three minutes in any one hour, from Units 1 through 4, the Operating Permit and/or Nevada SIP Rules 445.667 and/or 445.692.

62.     Beginning on or about October 1, 2002 and continuing until or about April 21, 2004, Defendant failed to report numerous opacity emission exceedances from Units 1 through 4, in violation of the 1992 Operating Permit, the NAC, and/or the Nevada SIP.

63.    Beginning on or about October 1, 2002, and continuing through the date of this Complaint, Defendant failed to provide quarterly reports of excess opacity emissions, in violation of the 1992 Operating Permit, the Operating Permit, the NAC and/or Nevada SIP Rule 445.692.

64.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation which occurred on or after May 30, 2001, and $32,500 per day for each such violation occurring on or after March 15, 2004 pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRD CLAIM FOR RELIEF

(Sampling, Testing, Monitoring, Recordkeeping and Reporting Violations)

65.    Paragraphs 1 through 64 are realleged and incorporated herein by reference.

66.    On one or more occasions in 2002, Defendant violated Section 6.E.4 of the 1992 Operating Permit, Section 445B.232 of the NAC and/or the Nevada SIP by failing to comply with reporting and notification requirements associated with the maximum emission rates for sulfur dioxide and sulfur from Units 1 through 4.

67.    Sections V.C, VI.E.4.d.2, VI.F.4.d.2, VI.G.4.d.2 and/or VI.H.4.d.2 of the Operating Permit and Nevada SIP Rule 445.692 require Nevada Power to report any deviations from the requirements of the Operating Permit to NDEP within a proscribed period of time.

68.    On numerous occasions, beginning on or about April 22, 2004, Defendant violated the Operating Permit and/or Nevada SIP Rule 445.692 by failing to report deviations from the requirements of the Operating Permit to NDEP within the proscribed time period.

69.     On numerous occasions, beginning on or about August 17, 2002, the Defendant violated Section F.1 of the 1992 Operating Permit and/or Sections VI.A.4.b.4, VI.C.4.b.4, VI.E.4.b.4, VI.G.4.b.3 and/or VI.G.4.b.4 of the Operating Permit by failing to perform requisite weekly coal sampling and maintain accurate records of coal sampling for Units 1, 2, 3 and/or 4, and their associated equipment.

70.     On numerous occasions, beginning on or about April 22, 2004, the Defendant violated Sections VI.M.4.a.i, VI.M.4.a.ii, VI.M.4.a.iii , VI.N.4.a.i, VI.N.4.a.ii, and/or VI.N.4.a.iii of the Operating Permit by failing to monitor, accurately record, and/or maintain records of the throughput of coal and hours of operation of the coal silos and associated equipment at Reid Gardner Station.

71.     On numerous occasions, beginning on or about April 22, 2004, Defendant has violated Sections VI.P.4.a.i, VI.P.4.a.ii, VI.P.4.a.iii, VI.R.4.a.i, VI.R.4.a.ii and/or VI.R.4.a.iii of the Operating Permit, by failing to comply with sampling, testing, monitoring, recordkeeping, and/or reporting requirements applicable to the operation of one or more fly ash silos, and associated equipment, at Reid Gardner Station.

72.     On numerous occasions, beginning on or about April 22, 2004, Defendant has violated Sections VI.B.4.b.2, VI.B.4.b.6, VI.B.4.b.7, VI.D.4.b.2, VI.D.4.b.6, VI.D.4.b.7, VI.F.4.b.2, VI.F.4.b.6, VI.F.4.b.7, VI.H.4.b.2, VI.H.4.b.6 and/or VI.H.4.b.7 of the Operating Permit by failing to comply with sampling, testing, monitoring, recordkeeping, and/or reporting requirements applicable to the combustion of fuel oil in one or more Units at Reid Gardner Station.

73.     On numerous occasions, beginning on or about April 22, 2004, Defendant has violated Sections VI.A.4.c.3, VI.A.4.c.4, VI.C.4.c.3, VI.C.4.c.4, VI.E.4.c.3, VI.E.4.c.4, VI.G.4.c.3 and/or VI.G.4.c.4 of the Operating Permit by failing to maintain accurate contemporaneous log(s) recording the heat content of coal combusted, the hourly heat input of coal combusted, in MMBtu per hour, and/or other required data concerning heat input for Units 1, 2, 3 and/or 4.

74.     On numerous occasions, beginning on or about April 22, 2004, Defendant has violated Sections VI.B.4.c.1, VI.B.4.c.4, VI.B.4.c.5, VI.D.4.c.1, VI.D.4.c.4, VI.D.4.c.5, VI.F.4.c.1, VI.F.4.c.4, VI.F.4.c.5, VI.H.4.c.1, VI.H.4.c.4 and/or VI.H.4.c.5 of the Operating permit by failing to maintain accurate contemporaneous log(s) concerning the operating scenarios, switches between operating scenarios, the heat content of fuel combusted, and the hourly heat input of coal and fuel oil combusted in Units 1, 2, 3 and/or 4.

75.     On numerous occasions, beginning on or about April 22, 2004, Defendant violated Sections VI.U.4.a.i, VI.U.4.a.ii and/or VI.U.4.a.iii of the Operating Permit by failing to comply with sampling, testing, monitoring, recordkeeping, and/or reporting requirements applicable to the operation of one or more lime storage silos, and associated equipment, at Reid Gardner Station.

76.     On numerous occasions, beginning on or about April 22, 2004, Defendant violated Sections VI.I.4.a.1, VI.I.4.b.1 - 5 and/or VI.I.4.c.2 of the Operating Permit by failing to comply with sampling, testing, monitoring, recordkeeping, and/or reporting requirements applicable to the operation of one or more cooling towers associated with one or more Units at Reid Gardner Station.

- 18 -

77.     On numerous occasions, beginning on or about April 22, 2004, Defendant

violated Sections VI.A.4.d.6, VI.B.4.d.6, VI.C.4.d.6, VI.D.4.d.6, VI.E.4.d.6, VI.F.4.d.6,

VI.G.4.d.6 and/or VI.H.4.d.6 of the Operating Permit by failing to provide NDEP with accurate

quarterly reports of excess emissions for $SO_2$ and $NO_x$ from Units 1 through 4 at Reid Gardner

Station.

78.     On numerous occasions, beginning on or about April 22, 2004, Defendant

violated Section V.B.1 of the Operating Permit by failing to keep or maintain records required by

the permit for applicable emission systems associated with Units 1 through 4.  By failing to keep

or maintain these records, Nevada Power cannot demonstrate the extent to which it has complied

with other conditions and emission limits specified by the Operating Permit.

79.     On numerous occasions, prior to April 22, 2004, Defendant violated Section

445B.265.2 of the NAC and/or Section 6.E.3.a of the 1992 Operating Permit by failing to

provide NDEP with accurate quarterly reports of excess emissions for $SO_2$ and $NO_x$  from Units

1 through 4 at Reid Gardner Station.

80.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each violation which occurred on or after May 30, 2001, and $32,500 per day for each such

violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### FOURTH CLAIM FOR RELIEF

(New Source Performance Standards and Operating Permit Violations)

81.     Paragraphs 1 through 80 are realleged and incorporated herein by reference.

82.    Defendant is the "owner or operator," within the meaning of Section 111(a)(5) of the Act, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of a coal preparation plant, within the meaning of 40 C.F.R. § 60.251(a), at Reid Gardner Station.

83.    Coal preparation plants associated with Units 3 and 4 at Reid Gardner Station are subject to the New Source Performance Standards, including provisions of Subpart Y of the NSPS, 40 C.F.R. §§ 60.250 - 60.254.

84.    Pursuant to 40 C.F.R § 60.8, the owner or operator of coal preparation plant must conduct a performance test in accordance with 40 C.F.R. § 60.253 within 60 days after achieving the maximum production rate at which the affected facility will be operated, but not later than 180 days after initial startup of such facility.

85.    Opacity measurements undertaken pursuant to Subpart Y shall use Method 9 and the procedures set forth in 40 C.F.R. § 60.11.  40 C.F.R. § 60.254(b)(2).

86.    Pursuant to the Operating Permit, Defendant was required to show initial compliance with the Subpart Y opacity limit within 180 days from the date of issuance of the Permit, by conducting and recording a Method 9 Initial Opacity Compliance Demonstration, performed and recorded by a certified opacity reader, to determine the opacity to the atmosphere from the discharge of the coal unloading station and coal conveying equipment associated with Unit Four.

87.    Defendant violated Sections VI.K.4.a.vi, VI.L.4.a.vi, VI.M.4.a.iv, and/or VI.N.4.a.iv of the Operating Permit and/or the requirements of NSPS Subpart Y by failing to conduct and record a Method 9 Initial Opacity Compliancy Demonstration for emission units supporting Unit 3 within the requisite time period.

- 20 -

88.     Defendant violated Section VI.L.4.a.vi of the Operating Permit and/or the requirements of NSPS Subpart Y by failing to conduct and record a Method 9 Initial Opacity Compliancy Demonstration for emission units supporting Unit 4 within the requisite time period.

89.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation which occurred on or after May 30, 2001, and $32,500 per day for each such violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### FIFTH CLAIM FOR RELIEF

(Facility Operating Violations)

90.     Paragraphs 1 through 89 are realleged and incorporated herein by reference.

91.     The federally approved SIP version of NDEP Rule 445.734, states that no person may cause or permit the handling, transporting or storing of any material in a manner which allows, or may allow, controllable particulate matter to become airborne.  Nor may any person, in any area designated by the Director, cause or permit the use of unpaved or untreated areas without first applying any measures required by the Director to prevent particulate matter from becoming airborne.  At all times relevant to this complaint, Rule 445.734 has been part of the federally approved and enforceable SIP for attainment and maintenance of the ambient air quality standards.

92.     Sections I.AE. I.AF and VIII.A of the Operating Permit set forth applicable requirements for the control of fugitive dust at Reid Gardner Station.

- 21 -

93.    On one or more occasions, including on or about August 17, 2004, Defendant violated its Operating Permit and Nevada SIP Rule 445.734, by failing to control fugitive dust and thereby allowing controllable particulate matter to become airborne at Reid Gardner Station.

94.    On numerous occasions, beginning on or about April 22, 2004, Defendant has violated Sections VI.E.3.c, VI.F.3.c, VI.G.3.c and/or VI.H.3.c of the Operating Permit, by failing to comply with maximum operating heat input rates while combusting coal or co-firing coal and fuel oil in one or more Units at Reid Gardner Station.

95.    Beginning on or about June 30, 2004, Defendant violated Sections VI.C.4.b.1, VI.C.4.b.2 and IX.B.5 of the Operating Permit by failing to install, calibrate and put into service a coal mass measuring device and associated continuous data collection system to accurately measure and record the quantity of coal combusted in Unit 2.

96.    Defendant violated Section VI.K.4.a.iii of the Operating Permit by failing to submit a visual observation plan for coal unloading and conveying equipment at Reid Gardner Station within the requisite time period specified by the Operating Permit and applicable law and regulations.

97.    Defendant violated Sections VI.K.4.a.iii, VI.K.4.a.iv, VI.K.4.a.v.e, VI.L.4.a.iii, VI.L.4.a.iv, and/or VI.L.4.a.v.e of the Operating Permit by failing to perform and/or accurately record biweekly visual observation surveys for coal unloading and conveying equipment at Reid Gardner Station.

98.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation which occurred on or after May 30, 2001, and $32,500 per day for each such

violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### SIXTH CLAIM FOR RELIEF

(Sulfur and Sulfur Dioxide Emission Violations)

99.     The allegations of Paragraphs 1 through 39, above, are realleged and fully

incorporated herein by reference.

100.    Pursuant to Section VI.A.2.a.6, VI.B.2.a.6, VI.C.2.a.6, VI.D.2.a.6, VI.E.2.a.7, and

VI.F.2.a.7 of the Operating Permit, the discharge of sulfur dioxide to the atmosphere may not

exceed 0.55 pound per million Btu, calculated on a 3-hour rolling average period, from Units 1,2,

or 3 at Reid Gardner Station.  Pursuant to Section VI.G.2.a.8 of the Operating Permit, the

discharge of sulfur dioxide from Unit 4 to the atmosphere may not exceed 0.29 pound per million

Btu, calculated on a 30 day rolling average period.

101.    Pursuant Section VI.A.2.a.5, VI.B.2.a.5, VI.C.2.a.5, VI.D.2.a.5, VI.E.2.a.6, and

VI.F.2.a.6 of the Operating Permit and Section 445B.22057 of the NAC, the discharge of sulfur

to the atmosphere may not exceed 0.275 pound per million Btu from Units 1, 2, or 3 at Reid

Gardner Station.

102.    Sections 6.D.2 and 6.D.1 of the 1992 Operating Permit set forth the standards for

emission limits for the discharge of sulfur and sulfur dioxide to the atmosphere from Units 1

through 4 at Reid Gardner Station.

103.    Section 445B.22057 of the NAC specifies that the allowable emission of sulfur

from fossil fuel-fired power Units 1, 2, and 3 at Reid Gardner Station, must not be greater than

0.275 pounds per million Btu.

- 23 -

104.   On one or more occasions in 2002, Defendant violated the 1992 Operating Permit, the Operating Permit, and/or the NAC by discharging into the atmosphere, from one or more Units at the Facility, sulfur dioxide and sulfur in excess of the maximum applicable emission limits.

105.   As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation which occurred on or after May 30, 2001, and $32,500 per day for each such violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States requests that this Court:

1.   Enjoin Defendant to take all measures necessary to achieve compliance with all provisions of the Act and its implementing regulations, including requirements established in the Nevada SIP, and Defendant's Title V Operating Permit.

2.   Assess a civil penalty against Defendant of up to $27,500 per day for each violation of the Clean Air Act, applicable regulations, and/or its Operating Permit, which occurred on or after May 30, 2001, and $32,500 per day for each such violation occurring on or after March 15, 2004;

3.   Award the United States and NDEP their respective costs in this action; and

4.   Grant such other relief as the Court deems just and proper.

Dated: ~~March~~ April 2, 2007

- 24 -

Respectfully submitted,

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment and Natural Resources
   Division
United States Department of Justice

J. THOMAS BOER
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
   Division
301 Howard Street, Suite 1050
San Francisco, CA 94105
(415) 744-6471; (415) 744-6476 (facsimile)


STEVEN W. MYHRE
United States Attorney (Acting)
District of Nevada


BLAINE T. WELSH (Bar No. 4790)
Civil Chief
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada  89101
(702) 388-6336
(702) 388-6787 (facsimile)


OF COUNSEL:
ALLAN ZABEL
Associate Regional Counsel
U.S. EPA, Region 9
75 Hawthorne Street
San Francisco, CA 94105

CATHERINE CORTEZ MASTO
Attorney General for the State of Nevada


WILLIAM FREY (Bar No. 4266)
Senior Deputy Attorney General
JANET HESS (Bar No. 3435)
Deputy Attorney General
Counsel for Nevada Division of
   Environmental Protection
Nevada Department of Justice
100 North Carson Street
Carson City, Nevada 89701-4717
(775) 684-1100
(775) 684-1108 (Facsimile)